1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CHRISTENSEN JAMES & MARTIN**
KEVIN B. CHRISTENSEN, ESQ. (175)
WESLEY J. SMITH, ESQ. (11871)
7440 W. Sahara Avenue
Las Vegas, Nevada 89117
Tel.:  (702) 255-1718
Fax:  (702) 255-0871
kbc@cjmlv.com, wes@cjmlv.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * * * *

UNITE HERE HEALTH, acting by and
through its designated fiduciary Matthew
Walker; SOUTHERN NEVADA
CULINARY & BARTENDERS PENSION
TRUST, acting by and through its designated
fiduciary Kim Gould,

                Plaintiffs,

vs.

PARBALL CORPORATION, a Nevada
corporation; CAESARS ENTERTAINMENT
CORPORATION, a Delaware corporation;
FLAMINGO LAS VEGAS OPERATING
COMPANY, a Nevada corporation; JOHN
DOES I-X, inclusive; ROE ENTITIES I-X,
inclusive,

                Defendants.

CASE NO.:  2:13-cv-00802-RCJ-NJK

**MOTION FOR PRELININARY
INJUNCTION**

Date:    N/A
Time:    N/A

      The Plaintiffs, Trustees of UNITE HERE HEALTH ("Welfare Fund") and the Southern

Nevada Culinary & Bartenders Pension Trust ("Pension Fund") (collectively the "Trusts" or

"Plaintiffs"), by and through their attorneys, Christensen James & Martin, and pursuant to 29

U.S.C. § 1132(a)(3), Fed. R. Civ. P. 65 and Local Rule 7-2, hereby move this Court for its Order

compelling Defendants to pay monies that are, without dispute, owed (and overdue) to the

Trusts.  Plaintiffs further move the Court for its Order requiring Defendants to timely submit

monthly fringe benefit reports and to make timely contributions to the Trusts from the date of

CHRISTENSEN JAMES & MARTIN
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

this Motion forward and during the period of any relevant collective bargaining agreement to which Defendants are bound.

This Motion is based upon the Memorandum of Points and Authorities filed herewith, the Exhibits and Declarations attached hereto, the pleadings and papers on file herein and upon any oral argument to be presented to the Court at the time of hearing.

DATED this 13th day of May, 2013.

CHRISTENSEN JAMES & MARTIN

By:  /s/ Wesley J. Smith
Wesley J. Smith, Esq.
*Attorneys for Plaintiffs*

**MEMORANDUM OF POINTS & AUTHORITIES**

**I.**

**INTRODUCTION**

The purpose of this Motion is to stop an employer from breaching its obligations under a collective bargaining agreement, remedy contribution delinquencies, stop further injury to the Trusts and halt further delinquencies during the pendency of this case.  Under the terms of a collectively bargained labor agreement, the Defendants are required to submit monthly contribution reports and fringe benefit contributions for each hour worked by their culinary and bartender employees, including employees working in subleased space (i.e. restaurants and other establishments).  Plaintiffs contend that covered labor is being performed at a restaurant called Carlos'n Charlie's inside the Flamingo Hotel & Casino.  The Defendants initially reported and paid contributions for work at this restaurant in compliance with their CBA obligations. However, the Defendants ceased reports and payments in August 2012.  The Defendants do not dispute that the hours need to be reported and that contributions should have been paid.

Plaintiffs seek an Order that: a) requires submission of reports of hours worked for all months August 2012 through current; b) requires prompt payment of monies that Defendants

agree are owed; and c) requires Defendants to timely report hours worked and to timely pay fringe benefit contributions owed going forward.  It is necessary for the Court to grant this relief because the Plaintiffs have been unable to otherwise persuade the Defendants to cure the breach and the Trusts are being irreparably harmed.  The Defendants have unequivocally refused to submit further reports and payments to the Trusts.  The Defendants' continuing failure to perform the obligations required by the CBA constitute a continuing injury to the Trusts that can only be remedied by the issuance of an injunction.

## II.

## STATEMENT OF FACTS

The Plaintiff Trusts are express trusts created pursuant to Section 302 of the Labor Management Relations Act of 1947 ("LMRA") as amended [29 U.S.C. § 186(c)] by written declarations of trust ("Trust Agreements") between the Culinary Workers Union, Local 226 and Bartenders Union, Local 165 ("Unions") and various employers and employer associations in the hotel-casino and entertainment industries in which the bargaining units of the Unions participate.

Defendant Parball Corporation ("Parball") and/or Defendant Flamingo Las Vegas Operating Company ("Flamingo Op. Co.") operate and manage the Flamingo Hotel & Casino on South Las Vegas Boulevard.  Defendant Caesars Entertainment Corp. ("Caesars") is the owner of Parball and Flamingo Op. Co. and maintains immediate direction and control over their business.  Most importantly, Caesars maintains a centralized human resources and accounting unit for all Caesars properties, including the Flamingo.  It appears that Caesars controls all finance and labor relations for the Flamingo through its subsidiaries Parball and/or Flamingo Op. Co.

The Defendants report and pay contributions to the Trusts pursuant to a collective bargaining agreement ("CBA") with the Unions for the Flamingo Las Vegas.  A true and correct

copy of the CBA is attached hereto as **Exhibit 1**.  By executing the CBA, the Defendants agreed to be bound by its terms and conditions, and by the terms and conditions of the Trust Agreements.

Under the Employee Retirement Income Security Act of 1974 ("ERISA") [29 U.S.C. §1001 et seq.], the LMRA, CBA and Trust Agreements, the Defendants are obligated to submit written reports to the Trusts on a timely basis showing the identities of their employees performing work covered by the CBA and the number of hours worked by or paid to these employees.  Further, they are obligated to timely pay fringe benefit contributions to the Trusts on a monthly basis and at specified rates for each hour worked by or paid to the employees covered by the CBA.  The monthly reports and corresponding contribution payments must be submitted to the Trusts at their administrative offices on or before the fifteenth (15th) day of each month following the work month in which hours of work covered by the CBA were performed, i.e. the report and contributions for the October 2012 work month were due on or before November 15, 2012.

Pursuant to Article 29 of the CBA, the Defendants agreed that work covered by the CBA could not be performed under any sublease, subcontract or other such agreement unless the terms of the lease, contract or other agreement specifically states that all such shall be performed only by members of the Flamingo's bargaining unit and that the Defendants exercise full control of the terms and conditions of employment of all such employees.  The Defendants lease a portion of its space at the Flamingo for the operation of the Carlos'n Charlie's restaurant.  The provisions of Article 29 apply to all operations on the Flamingo premises, including work performed in the Carlos'n Charlie's restaurant.

Carlos'n Charlie's opened for business sometime in March 2012.  The Defendants reported and contributed to the Trusts for work performed at the restaurant from the first date of

work until August 2012. At that point, the Defendants ceased reporting and contributing for work at the restaurant, yet the restaurant continues to operate to this date and covered labor continues to be performed on the premises. It seems as though the Defendants believe that they no longer have the obligation to report and pay for work performed at Carlos'n Charlie's. Because the Defendants ceased reporting and paying the contributions, there is a known delinquency owed to the Trusts of approximately $310,000 for unpaid contributions through the February 2013 work month. *See* summary of amounts owed, attached hereto as Exhibit 2. An additional $90,000 in unpaid contributions is estimated to be owed for the March and April 2013 work months. Delinquencies will continue to accrue every day. The Defendants claim that they do not have responsibility for this delinquency and that the Trusts should accept payment from the restaurant directly, even though there is not a signed labor agreement or other contractual relationship with the restaurant. This is a direct violation of the CBA. All of the Plaintiffs' attempts to correct this belief and to stop the violations of the CBA have been futile. Plaintiffs believe that the Defendants will accrue additional delinquencies and irreparably harm the Trusts and their beneficiaries if a preliminary injunction is not issued.

The Trusts seek an order from this Court requiring:

a) Defendants to pay all past due amounts, comprising past due principal contributions through the date of the issuance of the injunction, accrued interest and liquidated damages for late payment;

b) Requiring the Defendants to timely and accurately remit reports *and* payments to the Trusts for all employees performing labor covered by the CBA at the Carlos'n Charlie's restaurant no later than the fifteenth (15th) day of the month following the month in which the work was performed; and

c)  Defendants ensure that any and all violations of the CBA are appropriately addressed and will not continue in the future.

### III.

### ARGUMENT

> The purpose of ERISA was to stabilize the rights and liabilities involved in benefit plans established under collective bargaining agreements.  Section 2 of ERISA states, inter alia, that it is the declared policy of ERISA to protect participants of these plans by providing them with legal remedies, sanctions and access to federal courts to secure redress for violations of ERISA. . . . Thus, on the basis of the plain language of the statute and the attendant legislative history, we hold that section 502(a)(3) is unambiguous evidence of Congress' express intent to permit federal courts to issue injunctions.

*Laborers Fringe Benefit Funds-Detroit & Vicinity v. Nw. Concrete & Constr., Inc.*, 640 F.2d 1350, 1352 (6th Cir. 1981).  The Trusts bring the instant Motion to accomplish the stated purposes of ERISA by obtaining an injunction requiring Defendants to report and pay monthly fringe benefit contributions required by the CBA, Trust Agreements and ERISA.  This type of relief is frequently granted by the federal courts in ERISA litigation under 29 U.S.C. § 1132(a)(3). *See, e.g., Anthony v. Texaco, Inc.*, 803 F.2d 593, 598 (10th Cir. 1986) (*citing Laborers Fringe Benefit Funds v. Nw. Concrete & Constr.*, 640 F.2d 1350 (6th Cir.1981); *Van Drivers Union Local No. 392 v. Neal Moving & Storage*, 551 F.Supp. 429 (N.D. Ohio 1982)); *Mingoia v. Crescent Wall Sys.*, 2004 WL 1885952, *6-7 (S.D.N.Y. Aug. 23, 2004) ("In light of Defendants' past failures to make required contributions . . . permanent injunctive relief is justified . . . . Accordingly, Defendants are permanently enjoined from violating the employee benefit fund contribution provisions of the Trade Agreements."); *Mason Tenders Dist. Council v. Envirowaste & Transcontractors, Inc.*, 1999 WL 370667, * 3 (S.D.N.Y. June 7, 1999) (granting prospective injunctive relief to plaintiffs who sought "to enjoin defendants from committing any further [ERISA] violations in the future.").

An injunction is exactly the type of relief that is needed in this situation where the Defendants have ceased abiding by the CBA and have become delinquent and do not seem to believe that they have any further obligation to the Trusts.  Injunctive relief is permitted under ERISA "to enjoin a recalcitrant employer from failing to comply with the benefit payment provisions of a labor agreement." *Int'l Painters & Allied Trades Indus. Pension Fund v. Davanc Contracting, Inc.*, 808 F.Supp.2d 89, 95 (D.D.C. 2011); (*citing Nw. Concrete*, 640 F.2d at 1351–52).  If the Defendants are allowed to continue their course of action, then the amounts owed for contributions will grow by approximately $45,000 per month, plus accrued interest and liquidated damages, and cause the Trusts to incur additional attorney's fees and costs in collection (adding to the current delinquency which likely already exceeds $400,000).

The money owed for contributions (and the money Defendants are forcing the Trusts to spend on litigation) is used to create benefit eligibility for the Defendants' employees and to provide benefits to all of the Trusts' beneficiaries.  Nonpayment jeopardizes the Trusts' ability to perform their express purpose and function.  It is therefore necessary for the Court to issue an injunction requiring the Defendants to pay the amounts that are owed and to timely submit their reports and payments to the Trusts going forward.  In the absence of such an injunction, the increasing losses to the Trusts will threaten the welfare and pension benefits on which the Defendants' employees and others depend, and the Trusts' ability to fully collect the delinquencies asserted in this Case will dramatically decrease.

A.    ERISA Specifically Entitles Plaintiffs to Injunctive Relief.

Under ERISA, the Trusts are entitled to an injunction requiring the Defendants to pay all delinquent and future contributions to the Trusts.   The remedial provisions of 29 U.S.C. §1132(g)(2)(E) allow the Trusts to obtain "such other…equitable relief as the court deems appropriate" in addition to recovery of unpaid fringe benefit contributions, liquidated damages,

-7-

interest, attorney's fees and court costs.  In addition, 29 U.S.C. § 1132(a)(3) provides that a court may grant "appropriate equitable relief" as part of relief sought in civil actions "to enjoin any act or practice which violates any provision of this title or the terms of the plan."  Equitable relief available under the statute includes injunctive relief.  *See, e.g., Sheet Metal Workers' Int'l  Ass'n v. W. Coast Sheet Metal Co.*, 954 F.2d 1506 (9th Cir. 1992) (affirming injunction in part); *Cal. Serv. Employees Health & Welfare Trust Fund v. Adv'd Bldg. Maint.*, 42 Employee Benefits Cas. 2841, 2007 WL 3232444 *9, 13 (N.D. Cal. 2007) (modifying previous injunction requiring benefits to be paid and granting injunction prohibiting payment of extraordinary compensation to management until benefits are paid); *see also Gould v. Lambert Excavating, Inc.*, 870 F.2d 1214 (7th Cir. 1989) (granting injunction requiring employer to make delinquent and future contributions); *N. Cal. Glaziers v. Wolter*, 2009 WL 1458272, *3 (N.D. Cal. 2009) ("Under 29 U.S.C. § 1132(g)(2)(E), this Court is authorized to award whatever equitable relief it deems appropriate.  The Court GRANTS Plaintiffs' request for injunctive relief."); *Sheet Metal Workers Nat'l Health Fund v. Cunningham*, 2011 WL 1257822 (M.D. Tenn. 2011) (granting preliminary injunction requiring employer to pay monthly fringe benefit contributions).

Injunctive relief is permitted under ERISA "to enjoin a recalcitrant employer from failing to comply with the benefit payment provisions of a labor agreement." *Davanc Contracting, Inc.*, 808 F.Supp.2d at 95; (*citing NW. Concrete*, 640 F.2d at 1351–52).  These and numerous similar case opinions show that an injunction requiring the payment of past due, presently owed, or future contributions is precisely the type of relief contemplated by Congress to "enjoin" an "act or practice which violates…the terms of the plan."  This Court has granted injunctive relief to the Plaintiffs in similar circumstances before.  *See Hotel Employees & Rest. Employees Int'l Union Welfare Fund v. M.R. Whitsett, Inc.*, No. 09-01746, Docket No. 43 (D. Nev. Oct. 6, 2010); *Unite*

*Here Health v. Tinoco's Kitchen, LLC*, 2012 WL 5511639, 194 L.R.R.M. (BNA) 3163, 54 Employee Benefits Cas. 2012 (D. Nev. 2012).

Here, the Defendants have refused to submit reports or payments to the Trusts. The enforcement of the Defendants' Section 1145 obligation "to make contributions . . . in accordance with the terms . . . of such plan or such agreement" can only effectively be ensured through injunctive relief requiring timely reports and payments. This action has been brought, in part, to enjoin practices that violate both ERISA and the terms of the CBA, and it meets the requirements for injunctive relief under 29 U.S.C. § 1132(a)(3).

In view of the foregoing provisions, this Court should issue its Injunction in favor of the Trusts and against the Defendants, enjoining Defendants from further violations of the CBA and requiring payment of unpaid contributions during the pendency of this action. By issuing such an injunction, the Court will effectively ensure that the sums owed to the Trusts by Defendants will not continue to grow while this case is pending. The injunction should require payment within fifteen (15) days of the entry of the Court's Order hereunder, or within some other reasonable time period set by the Court.

B.     The Requirements for the Issuance of an Injunction are Met.

Rule 65 of the Federal Rules of Civil Procedure provides that federal courts may grant injunctions on terms as are deemed appropriate. Congress also provided specific statutory authority to permit federal courts to issue injunctions in connection with ERISA civil actions, like this one. The Court has ample authority to grant the Plaintiffs the relief they seeks.

1.     Relief of this Type has Historically been Granted in Similar Situations.

Plaintiffs are not requesting an anomalous form of relief. Similar relief was recently granted in other cases in this District to these very Plaintiffs. In *Hotel Employees & Rest. Employees Int'l Union Welfare Fund v. M.R. Whitsett, Inc.*, No. 09-01746, Docket No. 43 (D.

Nev., Oct. 6, 2010) and *Unite Here Health v. Tinoco's Kitchen, LLC*, 2012 WL 5511639, 194 L.R.R.M. (BNA) 3163, 54 Employee Benefits Cas. 2002 (D. Nev. 2012), the Plaintiffs brought similar actions to recover unpaid fringe benefits. In both cases, the defendant employers failed to pay contributions.

In the *Whitsett* and *Tinoco's* cases, Plaintiffs sought injunctions requiring employers to report and pay.  In *Whitsett*, Judge Jones issued a ruling from the bench granting a preliminary injunction, but the case was then re-assigned to Judge Navarro, who conducted a separate and additional hearing before entering a written Order granting the injunction. In *Tinoco's*, Judge Du granted a very similar motion involving the same CBA language (Article 29) and issued an order enjoining both a restaurant/lessee and a casino hotel/lessor from failing to pay contributions to the Plaintiffs.  The same situation is present here, damaging the very same Plaintiffs in the very same way, and a similar order is warranted here.

       2.    <u>An Injunction Should Issue Under a Relaxed Standard Because Plaintiffs Can Prove a Substantial Likelihood that a Statutory Violation has Occurred.</u>

The Defendants' continuing failure to comply with the terms of the CBA weighs strongly in favor of issuing an injunction.  Federal courts have recognized that employee benefit statutes are to be liberally construed in order to accomplish the purposes for which they were enacted. *See, e.g., Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 182 n.5 (1973).  Consistent with this principle, courts have held that where a statute authorizes a court to enjoin a statutory violation, traditional prerequisites for injunctive relief do not apply.  In order to obtain injunctive relief in such a situation a plaintiff need only prove a substantial likelihood that a statutory violation has occurred.  *See* Wright, Miller & Kane, <u>Federal Practice and Procedure: Civil</u> § 2948.4 (2d ed. 2002).

-10-

ERISA [29 U.S.C. § 1145] states "Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall…make such contributions in accordance with the terms…of such plan or such agreement."  Because ERISA specifically provides for injunctive relief, courts have held that no showing of factors such as irreparable harm is required of an ERISA plaintiff seeking such relief.  *See*, e.g., *Trs. ex rel. Teamsters Ben. Trust v. Casey's Office Moving & Serv., Inc.*, 2007 WL 1031320 (N.D. Cal. 2007) (granting injunction requiring employer to comply with CBA obligations as appropriate relief under 29 U.S.C. § 1132, without discussing traditional requirements for injunctive relief).

In *N. Cal. Glaziers v. Wolter*, 2009 WL 1458272 (N.D. Cal. 2009), an employee benefit trust fund was attempting to collect delinquent fringe benefit contributions from a signatory employer. The Trust Fund sought an injunction from the Court requiring the employer to submit to an Audit, which the employer had refused to do. The Court granted the injunction as a means of enforcing the express terms of a CBA. Here, the Plaintiffs seek similar equitable relief.

The Defendants have not made required contributions in accordance with the terms and conditions of the CBA.  The Trusts have obtained hours worked and determined that covered hours of work have been performed. Violations of 29 U.S.C. § 1145 have unquestionably occurred.  Undisputed facts demonstrate that the Defendants have failed to timely pay obligations. These failures to comply with the CBA and the clear requirements of federal statutes show that the Plaintiffs have reasonable grounds to believe that future violations are also likely. Plaintiffs are entitled to an injunction in order to help prevent future violations.

29 U.S.C. § 1132(a)(3) was enacted specifically to permit trusts like the Plaintiffs to enjoin practices like the Defendants' habitual practice of nonpayment.  The Court should issue a preliminary injunction requiring the Defendants a) to timely pay all contributions that are owed

and fall due while this case is pending, and b) to promptly pay the arrears that are admittedly owed.

        3.      <u>Even if the Classic Standard Applies, an Injunction Should Still Issue.</u>

        Even if all of the traditional prerequisites for issuance of an injunction apply, they are met in this case. Before granting injunctions, some courts have required ERISA trusts to prove some combination of the following prerequisites: 1) threat of irreparable harm, 2) a showing that the harm avoided by the injunction outweighs any harm caused by the injunction (balancing of harm), 3) likelihood of success on the merits, and 4) a showing that issuance of the injunction will not offend public policy. When balancing these interests, the primary prerequisites for the issuance of an injunction are: 1) that plaintiff's threatened injury be irreparable; and 2) that public policy will not be offended by the issuance of the injunction. *Van Drivers Union Local No. 392 v. Neal Moving & Storage*, 551 F.Supp. 429, 431 (D. Ohio 1982) (*citing NW. Concrete*, 640 F.2d 1350). Even under such a restrictive approach, the Plaintiffs are entitled to an injunction.

        a.      *The Defendants' Actions Are Causing Irreparable Harm.*

        The Defendants' failure to pay required contributions threatens benefits offered by the Trusts to the Defendants' employees and all beneficiaries of the Trusts. The Pension Trust exists to provide pension benefits to employees who qualify for them. The Welfare Trust exists primarily to act as a health plan, paying health benefits to medical providers on behalf of its participants. These benefits are placed in jeopardy when employers like the Defendants fail to pay required contributions to the Trusts. The Seventh Circuit Court of Appeals has acknowledged this, noting that:

> [Multi-employer] plans rely on documents to determine the income they can
> expect to receive, which governs their determination of levels of benefits . . .
> Once they promise a level of benefits to employees, they must pay even if the

> contributions they expected to receive do not materialize . . . If some employers do not pay, others must make up the difference in higher contributions, or the workers will receive less than was promised. Costs of tracking down reneging employers and litigation also come out of money available to pay benefits.

*Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1151 (7th Cir. 1989) (en banc).

> As this Court has previously stated, "[d]elinquent contributions damage the Funds' ability to meet their continuing fiduciary duty to provide benefits to employees and thus endanger not only employees, but also the Funds' financial security." *Bd of Trs. of Ohio Laborers' Fringe Ben. Programs v. Maint. Unlimited Inc.*, No. 2:06-CV-600, 2006 WL 2988376, at *2 (S.D. Ohio Oct. 17, 2006). S.D.Ohio,2011.

*Bd. of Trs. for the Ohio Laborers' Fringe Benefit Programs v. Savcon, Inc.,* 2011 WL 2633184 (S.D. Ohio) (unreported); s*ee also Bricklayers & Allied Craftsmen Health & Welfare Fund-Terre Haute v. Thomas Williamson Constr.*, 2010 WL 1948231 (S.D. Ind. 2010) (enjoining employer from failing to make timely payment to ERISA benefit funds where contributions were required by the terms of a collective bargaining agreement, the financial soundness of the welfare plan was jeopardized by the employer's continuing delinquencies, all of which showed a likelihood of irreparable harm if injunctive relief were not to issue).

The Ninth Circuit Court of Appeals has held that an injunction is proper in this factual circumstance because the potential loss of benefits alone satisfies the prerequisite that irreparable harm be shown. *See Beltran v. Myers*, 677 F.2d 1317, 1322 (9th Cir. 1982) ("Plaintiffs have shown a risk of irreparable injury, since enforcement of the California rule may deny them needed medical care. That is a sufficient showing."); *accord Meehan v. Gristede's Supermarkets, Inc.*, No. 95–2104, 1997 WL 1097751, *3 (E.D.N.Y. Sep. 25, 1997) (loss of health insurance benefits may irreparably harm employees and their families); *Whelan v. Colgan*, 602 F.2d 1060, 1062 (2d Cir.1979) ("[T]he threatened termination of benefits such as medical coverage for workers and their families obviously raised the spectre of irreparable injury.").

Defendants' failure to pay required contributions violates federal law and it jeopardizes the availability of funds to pay for medical care for thousands of participating employees and their dependents.   To date, the Welfare Fund has not chosen to withdraw benefits from the culinary and bartender employees of Carlos'n Charlie's, but the delinquency owed to the Welfare Fund alone now likely exceeds $300,000 through the April 2013.   By the time this Motion is decided, the delinquency will be much more.   The Welfare Fund simply cannot continue to provide benefits under current circumstances indefinitely.   Unless Defendants pay as required, an increase in the contribution rates required of other employers may be necessary, and the health benefits offered to the employees of Carlos'n Charlie's may be lost.   Thus, the harm caused by the Defendants' failure to pay contributions could extend to others beyond the parties to this action. The injunction the Plaintiffs seek will aid in ending, or at least in limiting such harm.

       b.     *Plaintiffs Will Suffer Harm If the Status Quo Is Maintained; Defendants Will Suffer No Legally-Cognizable Harm If an Injunction Issues.*

The only potential harm an injunction would cause to the Defendants is not "harm" at all, but an enforcement of what is already required under the CBA and federal law [29 USC § 1145]. The Defendants would simply be ordered to resume an obligation they formerly fulfilled (until August 2012) and timely pay their obligations to the Trusts. The Defendants acknowledged their obligations under the CBA each time they submitted reports to the Trusts from March 2012 through July 2012.   Additionally, they have acknowledged that the CBA remains in force each time they have submitted reports and payments for the other employees performing work at the Flamingo.   They cannot unilaterally decide that obligation to report and pay for the Carlos'n Charlie's employees ended.

The Trusts have already suffered enough harm.   If the Defendants are allowed to continue to disregard their obligations to pay, then the Trusts will continue to be harmed by delinquencies

that will not only remain unpaid, but will apparently continue to grow with little likelihood of payment.  This harm can easily be avoided through issuance of the injunction Plaintiffs seek. The harm avoided by the issuance of an injunction (including the potential loss of employee benefits) is highly relevant, very real, and it undeniably outweighs any "harm" that an injunction forcing the Defendants to live up to their obligations under the CBA could possibly cause.

c.     *The Plaintiffs Are Very Likely to Prevail on the Merits of Their Case.*

The Trusts are likely to prevail in establishing that Defendants are in violation of ERISA. The CBA remains in effect, as demonstrated by Defendants' continued reporting to the Trusts for the other employees at the Flamingo.  The fact is that the Defendants have not paid amounts they owe for the Carlos'n Charlie's employees.  ERISA collection actions such as this are routine and straightforward.  There is little reason to believe that Defendants can successfully mount a defense to Plaintiffs' claims.

d.     *The Injunction Sought by Plaintiffs Will Further Public Policy.*

The requested injunction will further the public policy underlying ERISA.  29 U.S.C. § 1001 sets forth Congress' findings in enacting ERISA.  At section 1001(a), Congress stated that ERISA employee "benefit plans affect interstate commerce," that "the continued well-being and security of millions of employees and their dependents are directly affected by these plans; [and] that they are affected with a national public interest."  Congress has expressly found that the public has an interest in ensuring that ERISA Trusts are fully-funded.  There could hardly be a stronger policy statement in favor of issuing the requested injunction.  As one court put it:

> In *Central States Southeast and Southwest Areas Pension Fund v. Hitchings Trucking, Inc.,* 472 F.Supp. 1243, (E.D. Mich.1979), the court noted that ERISA was intended to stabilize the rights and liabilities of pension plans established by collective bargaining. The continued stability of such a plan is precisely what is at stake in the present case. Congressional intent and public policy are important considerations which guide this Court in determining the necessity of the injunction in the instant case. It is clear that "stability and protection require

-15-

1
2
assurance of adequate funding and the prevention of arbitrary termination rights." *Cent. States, Se. & Sw. Areas Pension & Health & Welfare Funds v. McNamara Motor Express, Inc.,*503 F.Supp. 96 (W.D.Mich.1980).

3

4

5

6

7
*Van Drivers Union Local No. 392 v. Neal Moving & Storage*, 551 F.Supp. 429, 432 (D.C. Ohio 1982).   An injunction that forces a delinquent employer to pay (as contractually obligated and statutorily required) cannot possibly hinder public policy, but rather promotes public policy by ensuring that the Trusts are properly funded, as explicitly intended by Congress.

8
**IV.**

9
**CONCLUSION**

10

11

12

13

14

15

16

17

18

19
All prerequisites for issuance of an injunction have been met in this Case.  The Court should issue its Injunction in favor of the Trusts and against the Defendants ordering (i) that Defendants accurately report and remit contributions to the Trusts for all employees performing labor covered by the CBA at the Carlos'n Charlie's restaurant no later than the fifteenth (15th) day of the month following the month in which the work was performed; (ii) that Defendants pay to the Trusts all unpaid contributions and related damages; and (iii) that Defendants ensure that any and all violations of the CBA as described herein are appropriately addressed and will not continue in the future.

DATED this 13th day of May, 2013.

20

21

22

23

24

25

26
CHRISTENSEN JAMES & MARTIN

By:    */s/ Wesley J. Smith*
Wesley J. Smith, Esq.
Nevada Bar No. 11871
7440 W. Sahara Avenue
Las Vegas, Nevada 89117
Tel.: (702) 255-1718
Fax: (702) 255-0871
Email: wes@cjmlv.com
*Attorneys for Plaintiffs*

27

28