1

2

3

4          **UNITED STATES DISTRICT COURT**

5              **DISTRICT OF NEVADA**

6

7    UNITE HERE HEALTH et al.,              )
                                            )
8              Plaintiffs,                  )
                                            )        2:13-cv-00802-RCJ-NJK
9        vs.                                )
                                            )
10   PARBALL CORP. et al.,                  )              **ORDER**
                                            )
11             Defendants.                  )
     ───────────────────────────────────   )

12          This case arises out of the alleged failure of an employer to make required contributions

13   to two union trust funds.  Pending before the Court is a Motion for Preliminary Injunction (ECF

14   No. 4).  For the reasons given herein, the Court denies the motion.

15   **I.     FACTS AND PROCEDURAL HISTORY**

16          Plaintiffs Unite Here Health and Southern Nevada Culinary & Bartenders Pension Trust

17   are Employee Retirement Income Security Act ("ERISA") trusts entitled to contributions for each

18   hour worked by bartenders and other culinary workers under a Collective Bargaining Agreement

19   ("CBA") to which Defendants Parball Corp., Caesar's Entertainment Corp., and Flamingo Las

20   Vegas Operating Co. are subject. (Compl. ¶¶ 2–7, 9–1, May 7, 2013).  Under Article 29 of the

21   CBA, covered work performed on the premises of Flamingo Las Vegas may not be performed

22   under subcontract or sublease unless the relevant agreement specifies that covered work must be

23   performed by members of the Flamingo Las Vegas bargaining unit and that Flamingo Las Vegas

24   will exercise full control over employment; in other words, contracting for outside labor of types

25   covered by the CBA (bartending and culinary labor), or permitting such outside labor under a

1  lease, is not allowed. (*See id.* ¶ 12).  In April 2012, a restaurant called Carlos 'n Charlie's began

2  operations at Flamingo Las Vegas under a sublease from one or more Defendants, and covered

3  labor has been performed there continuously since. (*Id.* ¶¶ 13, 19).  Defendants reported covered

4  hours at Carlos 'n Charlie's to Plaintiffs and submitted required contributions, accordingly, from

5  March through July 2012, but they stopped reporting and making contributions in August 2012.

6  (*Id.* ¶¶ 20–21).  The total delinquency as of April 30, 2013 was $329,031.95. (*Id.* ¶ 26).

7       Plaintiffs sued Defendants in this Court for: (1) breach of contract under 29 U.S.C.

8  §§ 1132(g)(2) and 1145; (2) breach of fiduciary duty under §§ 1002, 1104, 1109, and 1132; and

9  (3) injunctive relief under § 1132(a)(3).  Plaintiffs have moved for a preliminary injunction.

10  **II.   LEGAL STANDARDS**

11       The Court of Appeals has used two separate sets of criteria for determining whether to

12  grant preliminary injunctive relief:

13       Under the traditional test, a plaintiff must show: (1) a strong likelihood of success
     on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary

14       relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4)
     advancement of the public interest (in certain cases). The alternative test requires

15       that a plaintiff demonstrate either a combination of probable success on the merits
     and the possibility of irreparable injury or that serious questions are raised and the

16       balance of hardships tips sharply in his favor.

17  *Taylor v. Westly*, 488 F.3d 1197, 1200 (9th Cir. 2007). "These two formulations represent two

18  points on a sliding scale in which the required degree of irreparable harm increases as the

19  probability of success decreases." *Id.*

20       The Supreme Court has ruled, however, that a plaintiff seeking an injunction must

21  demonstrate that irreparable harm is "likely," not just possible. *Winter v. NRDC*, 555 U.S. 7,

22  19–23 (2008) (rejecting the Ninth Circuit's alternative "sliding scale" test, at least as to the

23  irreparable harm element).  The Court of Appeals has explicitly recognized that its "possibility"

24  test was "definitively refuted" in *Winter*, and that "[t]he proper legal standard for preliminary

25  injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he

1    is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of

2    equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v.*

3    *Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*, 129 S. Ct. at 374) (reversing a

4    district court's use of the Ninth Circuit's pre-Winter "sliding-scale" standard and remanding for

5    application of the proper standard).

6            A later panel ruled that the sliding scale test remains viable when there is a lesser

7    showing of likelihood of success on the merits amounting to "serious questions," just not when

8    there is a lesser showing of likelihood of irreparable harm. *See Alliance for the Wild Rockies v.*

9    *Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011). *Cottrell* presents some difficulty in light of *Winter*

10   and *Selecky*. As an initial matter, to the extent *Cottrell*'s interpretation of *Winter* is inconsistent

11   with *Selecky*'s interpretation of the same case, *Selecky* controls. *See Miller v. Gammie*, 335 F.3d

12   889, 899 (9th Cir. 2003) (en banc) (holding that, in the absence of an intervening Supreme Court

13   decision, only the en banc court may overrule a decision by a three-judge panel). In any case, the

14   Supreme Court stated in *Winter* that "[a] plaintiff seeking a preliminary injunction must establish

15   that he is *likely* to succeed on the merits, that he is *likely* to suffer irreparable harm in the absence

16   of preliminary relief, that the balance of equities tips in his favor, *and* that an injunction is in the

17   public interest." *Winter*, 555 U.S. at 20 (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008);

18   *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456

19   U.S. 305, 311–12 (1982)) (emphases added). The test is presented as a four-part conjunctive test,

20   not as a four-factor balancing test, and the word "likely" modifies the success-on-the-merits

21   prong in exactly the same way it separately modifies the irreparable-harm prong, indicating that

22   in an appropriate case, the Court would require a movant to show that he is more likely than not

23   to succeed on the merits. In rejecting the sliding-scale test, the *Winter* Court emphasized the fact

24   that the word "*likely*" modifies the irreparable-injury prong. *See id.* at 22 (emphasis in original).

25   The word "likely" also modifies the success-on-the-merits prong. *See id.* at 20.

1    In summary, to satisfy *Winter*, a movant must show that he is "likely" to succeed on the

2    merits.  "Likely" means "having a high probability of occurring or being true." Merriam–Webster

3    Dictionary, http://www.merriam-webster.com/dictionary/likely.  This colloquial, lay definition of

4    "likely" may be too stringent.  Though it could be read consistently with *Winter*,

5    Merriam–Webster's definition of "likely" would appear to require a showing corresponding to

6    the clear-and-convincing-evidence standard, because something with a "high probability" of

7    being true has more than a mere greater-than-not chance of being true.  Black's Law Dictionary,

8    a more contextual reference work, defines the "likelihood-of-success-on-the-merits test" more

9    leniently as "[t]he rule that a litigant who seeks [preliminary relief] must show a reasonable

10   probability of success . . . ." *Black's Law Dictionary* 1012 (9th ed. 2009).  The Court must

11   reconcile the cases by interpreting the *Cottrell* "serious questions" requirement to be in harmony

12   with the *Winter/Selecky* "likelihood" standard, not as being in competition with it.  "Serious

13   questions going to the merits" must mean that there is at least a reasonable probability of success

14   on the merits.  On its face, the phrase "serious questions" appears to focus on the gravity of the

15   issues, but appears silent on the probability of the truth of the proffered proposition, which is the

16   focus of the success-on-the-merits prong.  The gravity of the issues is separately considered

17   under the balance-of-hardships prong.  The *Cottrell* court must have meant something like

18   "reasonable probability," which appears to be the most lenient position on the sliding scale that

19   can satisfy the requirement that success on the merits be "likely."  If success on the merits is

20   merely possible, but not at least reasonably probable, no set of circumstances with respect to the

21   other prongs will justify preliminary relief.

22   **III.    ANALYSIS**

23   Plaintiffs ask the Court for three measures of relief via the present motion, none of which

24   will prevent any harm that is irreparable:

25   ///

Plaintiffs seek an Order that: a) requires submission of reports of hours worked for all months August 2012 through current; b) requires prompt payment of monies that Defendants agree are owed; and c) requires Defendants to timely report hours worked and to timely pay fringe benefit contributions owed going forward.

(*See* Mot. 2–3, May 13, 2013, ECF No. 4). As to the demand for immediate payment, there is no irreparable harm shown. The right to money damages is reparable through a money judgment, and movants do not allege Defendants' impending insolvency or other circumstances making the posting of a bond or order against the potentially fraudulent transfer of funds necessary. Any consequential damages incurred due to continuing nonpayment will be recoverable as damages if Plaintiffs are successful. Defendants may bear that risk if they wish. Nor is the alleged failure of Defendants to report past or future hours irreparable. If Plaintiffs succeed, they will obtain this remedy. Defendants are already prevented by the discovery rules from destroying any relevant evidence, and an adverse inference instruction and/or "death penalty sanctions," as appropriate, are sufficient remedies for the destruction of such records before trial.

Moreover, apart from the facial impropriety of ordering the payment of damages as a putative form of equitable relief, there are fundamental problems with ordering "preliminary damages" as a form of "injunctive relief." Although an injunction is a statutorily available remedy to force an employer to comply with ERISA as a general matter, *see* 29 U.S.C. § 1132(a)(3) (authorizing "appropriate equitable relief"), a *preliminary* injunction amounting to an award of money damages before trial, and without a plaintiff satisfying the Rule 56(a) standard, is not "appropriate." On the contrary, it is problematic for at least two reasons. First, ordering payment of the ultimate damages claim itself as preliminary relief would permit Rule 65 to circumvent the Seventh Amendment right to a jury trial in an impermissible way, an analysis the courts to approve such a remedy have not sufficiently considered in the Court's opinion. Although the ERISA claim is based upon statutory rights, it is for delinquent trust fund contributions and therefore is a legal action for breach of contract—it is not, in this case, anyway,

1   analogous to an action for replevin of, a constructive trust in, or an equitable lien against

2   specifically identified monies—which kinds of claims are ordinarily heard at law and tried before

3   a jury, so the Seventh Amendment right to a jury trial applies to them.  Second, Rule 65(c) also

4   makes such an order problematic, because that rule requires the posting of security sufficient to

5   pay the costs and damages of a wrongfully enjoined party.  Such costs and damages will

6   necessarily equal or exceed the amount of any erroneous order to pay money.  In other words,

7   although security for a preliminary order of *equitable* relief is a coherent concept, sufficient

8   security for an order to pay "preliminary damages" of X dollars will itself be X dollars (or more,

9   because of interest and other consequential effects), leaving movants without the immediate

10  relief sought, because the security required for an award of "preliminary damages" would offset

11  the preliminary award itself.  The problem does not arise where equitable relief is sought,

12  because the security (money or property) for the equitable order is of a different nature than the

13  relief given in the order such that offset is irrelevant.  Of course, Plaintiffs could post as security

14  some property or other funds not currently in use, but the very availability to Plaintiffs of such

15  property or funds would tend to undermine any argument that Plaintiffs in fact require funds

16  from Defendants immediately to avoid some irreparable harm.

17         The Court will not order "preliminary damages" as a putative form of equitable relief.

18  Plaintiffs remain free to file a Rule 65(a)(2) motion to consolidate the trial on the merits with a

19  hearing on a renewed motion for preliminary injunction if they believe the matter is truly urgent,

20  but Defendants are constitutionally entitled to a trial before being made to pay damages.

21  ///

22  ///

23  ///

24  ///

25  ///

1

**CONCLUSION**

2        IT IS HEREBY ORDERED that the Motion for Preliminary Injunction (ECF No. 4) is

3 DENIED.

4        IT IS SO ORDERED.

5 Dated this 19th day of June, 2013.

6                                              _____

7                                              ROBERT C. JONES
                                               United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25